IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Orlando Harris (R14754), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 5827 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Edwards, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court grants Plaintiff's application for leave to proceed *in forma pauperis* [3] and orders the trust fund officer at Plaintiff's place of incarceration to deduct $6.13 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee and to continue making monthly deductions in accordance with this order. The Court has conducted its initial screening of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and will permit Plaintiff's claims to proceed against Defendants Miller, Ross, and Edwards consistent with this order. The Clerk of Court is directed to: (1) send a copy of this order (electronically if possible) to the trust fund officer at Plaintiff's current place of incarceration and to the Court's fiscal department; (2) file the complaint [1]; (3) issue summonses for service of the complaint on Defendants Miller, Ross, and Edwards by the U.S. Marshal; (4) terminate Defendant Anastasio; and (5) send Plaintiff three blank USM-285 (Marshals Service) forms, instructions for completion of the forms, and a copy of this order. Plaintiff must complete and return one USM-285 form for each Defendant by April 4, 2025. Failure to effect service by the deadline set forth in Fed. R. Civ. P. 4(m) may result in dismissal of this case in its entirety. Plaintiff is advised he has a continuing obligation to notify the Court if his address changes while this case is open. Failure to do so may result in dismissal of this lawsuit with no further notice. The Court denies without prejudice Plaintiff's motion for attorney representation [4] and motion for scheduling and discovery order [8]. The Court will enter further orders in this case after Defendants have been served and responded to Plaintiff's complaint.

## STATEMENT

Illinois prisoner Orlando Harris initiated this lawsuit *pro se* under 42 U.S.C. § 1983 seeking redress for alleged constitutional violations at Stateville Correctional Center on February 1, 2023. Plaintiff requests leave to proceed *in forma pauperis* and has demonstrated that he cannot prepay the Court's filing fee. The Court therefore

grants his application to proceed *in forma pauperis*.

Pursuant to 28 U.S.C. § 1915(b), the Court orders: (1) Plaintiff to immediately pay (and the facility having custody of him to automatically remit) $6.13 to the Clerk of Court for payment of the initial partial filing fee and (2) Plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court "20 percent of the preceding month's income credited to" Plaintiff's account "each time the amount in the account exceeds $10" until the $350.00 filing fee has been paid in full. Income for purposes of calculating payments under § 1915(b) includes all deposits to an inmate's trust fund account, including but not limited to gifts and bequests. *Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998). All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and should clearly identify Plaintiff's name and the case number assigned to this case. In the event Plaintiff is transferred prior to his debt being paid off in full, the Court directs the trust fund officer to send a copy of this order to the transferee facility.

The Court next considers Plaintiff's complaint. The Court must screen the complaint and dismiss it, or any portion thereof, if the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. *See* 28 U.S.C. § 1915A; *Jones v. Bock*, 549 U.S. 199, 214 (2007). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), while giving the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020).

Plaintiff alleges that, on February 1, 2023, around 1:45 p.m., Plaintiff was attempting to stretch his back (due to "unbearable" pain) when his right knee gave out and he fell. [1] at 4–5. Finding himself unable to move because of his back pain, he notified Officer Ross and Officer Miller of his predicament and asked for a medtech. *Id.* at 5. Both officers responded, "ok I got you" and left the wing. *Id.* Plaintiff then attempted to get to his bunk, but in the process urinated on himself. *Id.* Other inmates then began shouting to get the officers' attention. *Id.* Officer Ross, Officer Miller, and Officer Lysaught returned to the wing to see what all the "screaming" was about, and Officer Ross confirmed that he called a medtech for Plaintiff. *Id.* The officers again left the wing. *Id.* at 6.

Around 4:00 p.m., Nurse Bonnie came to give another inmate an insulin shot at which point she also assessed Plaintiff. *Id.* Nurse Bonnie brought a wheelchair to transport Plaintiff to the urgent care unit; however, he was unable to get in the wheelchair and ultimately had to be transported by stretcher. *Id.* Plaintiff was then given two shots (of unspecified medicine) at the urgent care unit. *Id.* After about an hour, Plaintiff's entire body was weak, and he had no feeling in his legs or toes. *Id.* Plaintiff notified the nurses that he needed something to eat and that he felt very weak. *Id.* An unidentified nurse supervisor told Plaintiff he could not eat in the urgent care unit, and asked Plaintiff if he could walk to the bullpen. *Id.* Plaintiff responded that he could not walk, but he nevertheless attempted to stand and fell again. *Id.* The attending nurses tried to get Plaintiff onto a stretcher so he could get some food and they called two sergeants for help with this task. *Id.* Sergeant Edwards arrived at the urgent care unit "full of frustration" and proceeded to grab Plaintiff by the back of his shirt and waist, drag him off the ground, and throw him onto the stretcher. *Id.* at 7. Plaintiff landed on the stretcher awkwardly on his backside, causing his lower back to "burn" with pain. *Id.* Sergeant Anastasio then began to handcuff Plaintiff to the stretcher while screaming "you can walk now!" *Id.* Plaintiff was later taken to his cell after Doctor Hence notified the nurse that Plaintiff would be admitted. *Id.*

Plaintiff characterizes Sergeant Edwards's conduct as a "malicious" "sadistic" and "viscous" attack, and asserts that Sergeant Edwards took advantage of the fact that there were no cameras in the urgent care unit. *Id.* at 8. According to Plaintiff, Sergeant Edwards assaulted him in retaliation for a past grievance he filed complaining about Sergeant Edwards' staff, which made extra work for Sergeant Edwards. *Id.* Similarly, Plaintiff alleges that Officers Ross, Miller, and Lysaught deprived him of medical attention in retaliation for previous grievances Plaintiff filed against (unidentified) correctional staff, including a grievance Plaintiff submitted regarding his placement on crisis watch. *Id.* Plaintiff alleges that Sergeant Anastasio "covered" for his co-worker, although Plaintiff does not further explain which co-worker Sergeant Anastasio was covering for or what actions he took when covering for them. *Id.* He seeks nominal, compensatory, and punitive damages. *Id.* at 1, 2, 10–11.

Correctional officials may be liable under the Eighth Amendment if they "display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). To state such a claim, a plaintiff must allege facts indicating that he suffered from a serious medical condition and the defendants were deliberately indifferent to his needs, meaning they deliberately disregarded an excessive risk of harm to his health or safety. *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference can include "a prison official's

3

decision to ignore a request for medical assistance" as well as "an inexplicable delay in treatment which serves no penological interest." *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), as amended (Aug. 25, 2016); *see also Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.").

The Court assumes, without deciding, that Plaintiff suffered from a serious medical condition given his alleged inability to walk or stand, his "unbearable" pain, and his later admission for treatment. *See, e.g., Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (incapacitation due to "excruciating" back pain combined with a subsequent diagnosis and treatment for muscle spasm qualified as a serious medical need). Plaintiff has alleged that Officer Ross and Officer Miller offered blanket assurances that they would request (or had requested) medical care for him, yet he did not actually receive any care for approximately two hours. Deliberate indifference is "an exacting standard requiring something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (cleaned up). A "prompt call to the nurse" can be sufficient to negate liability under certain circumstances. *Earl v. Racine County Jail*, 718 F.3d 689, 692 (7th Cir. 2013). Because this case is at the pleading stage, however, the Court must draw all reasonable inferences in favor of Plaintiff. And, on the facts alleged, it is reasonable to infer that Officer Ross and Officer Miller failed to convey the required level of urgency (if they called for a medtech at all). Further development of the factual record is needed, and the Court permits Plaintiff to proceed against both officers. *Cf. Lewis*, 864 F.3d at 563-64 (reversing grant of summary judgment in favor of defendants who literally "did nothing" for 90 minutes while plaintiff was incapacitated and sobbing).

Plaintiff also plausibly alleges that Sergeant Edwards demonstrated a total lack of concern for Plaintiff's welfare when he roughly dragged Plaintiff and threw him onto the stretcher, causing Plaintiff further injury and pain, under circumstances where Sergeant Edwards would have been aware of a serious risk of harm to Plaintiff's health. No more is required at this stage of the proceedings.

Plaintiff has not, however, alleged that Sergeant Anastasio engaged in any actions that put Plaintiff at further risk of harm to his health or safety. While Sergeant Anastasio's alleged actions of screaming at Plaintiff are distasteful and concerning, they do not rise to the level of a constitutional violation.

Plaintiff also fails to state a claim for excessive force under the Eighth Amendment. While Plaintiff characterizes Sergeant Edwards's conduct as a form of punishment, the full context of the complaint makes clear that Sergeant Edwards' conduct was limited to his rough handling of Plaintiff when transferring him to a stretcher in the urgent care unit. "Conduct that does not purport to be punishment

4

at all" but instead is related to "the State's responsibility to attend to the medical needs of prisoners" is appropriately reviewed under the deliberate indifference standard articulated above. *See Whitley v. Albers*, 475 U.S. 312, 319–20. Plaintiff has also not alleged any improper use of force with respect to Sergeant Anastasio's conduct when handcuffing Plaintiff to the stretcher. Plaintiff therefore has failed to state an excessive force claim against either Sergeant Edwards or Sergeant Anastasio and these claims are dismissed without prejudice.

Plaintiff also fails to state a plausible claim for First Amendment retaliation. To state a retaliation claim, Plaintiff must allege facts suggesting that: (1) he engaged in protected First Amendment activity; (2) was subjected to an adverse action likely to deter future First Amendment activity; and (3) his protected First Amendment activity was "at least a motivating factor of the adverse action." *Reed v. Bowen*, 769 F. App'x 365, 370 (7th Cir. 2019) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Even assuming that Plaintiff engaged in protected First Amendment activity when he filed grievances at Stateville, his allegations are nevertheless too conclusory to state a plausible claim for retaliation. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' … will not do.") (quoting *Twombly*, 550 U.S. at 555); *see also Zimmerman v. Bornick*, 25 F.4th 491, 492–93 (7th Cir. 2022) ("threadbare" allegations of retaliation insufficient). Plaintiff has alleged that he had a history of filing grievances and that Defendants later violated his constitutional rights; however, there is no indication that these events are in any way related. Plaintiff does not allege that his grievances were close in time to the events of February 1, 2023, nor does he allege that the grievances involved any of the Defendants (other than "creating work" for Sergeant Edwards). No Defendant is alleged to have referred to the grievances at any point, and there is no indication that Officer Ross, Officer Miller, or Sergeant Anastasio were even aware of Plaintiff's grievances. In short, nothing in the complaint suggests any connection between the events of February 1, 2023, and Plaintiff's grievances, other than Plaintiff's own speculation as to Defendants' motives. Without more, Plaintiff has not pled sufficient facts to support his claims of retaliation, and the Court dismissed these claims without prejudice.[1]

For the reasons set forth above, Defendants Ross, Miller, and Edwards must respond to Plaintiff's allegations. Nothing in this order precludes any available defenses, but Defendants should keep in mind that the Court cannot reach the merits of Plaintiff's claims without fact development that is not appropriate at this time. *See Schillinger*, 954 F.3d at 993-94 (explaining that courts screen prisoners' complaints

---

[1] Plaintiff likewise fails to state a claim under the Americans with Disabilities Act, because he has not alleged that he was excluded from participation in any service, program, or activity at Stateville. See 42 U.S.C. § 12132 (Title II of the ADA states that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity...."); Pennsylvania Dep't of Corr, v. Yeskey, 524 U.S. 206, 210 (1998) (state prisons are considered public entities under the ADA).

using the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)).

The Clerk will provide Plaintiff three blank USM-285 (Marshals service) forms for purposes of effectuating service on Defendants Ross, Miller, and Edwards. Plaintiff must complete and return one USM-285 form for each Defendant by the date set forth above. Failure to effect service by the deadline set forth in Fed. R. Civ. P. 4(m) may result in dismissal of this case in its entirety.

For the sake of efficiency, the Court appoints the U.S. Marshal to serve Defendants Ross, Miller, and Edwards and directs the Marshal to make all reasonable efforts to locate and serve Defendants; however, the U.S. Marshal will not attempt service unless and until completed USM-285 service forms are received from Plaintiff. If Defendants can no longer be found at the work address provided by Plaintiff, officials from the Illinois Department of Corrections must provide the Marshal with the Defendant's last-known address. The Marshal will use the information only for purposes of effectuating service or to show proof of service, and any documentation of the address shall be retained only by the Marshals Service. Address information will not be maintained in the Court file nor disclosed by the Marshal, except as necessary to serve a Defendant. The Court authorizes the Marshal to send a Rule 4(d) request for waiver of service before attempting personal service.

The Court instructs Plaintiff to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. Every document submitted by Plaintiff must include a certificate of service indicating the date on which he gave the document to jail or prison authorities for mailing. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to Plaintiff. Plaintiff is advised that he must promptly submit a change-of-address notification if he is transferred to another facility or released while this case is open. If he does not keep the Court informed of his address, this lawsuit may be dismissed with no further notice. Plaintiff should keep a copy of all documents he submits to this Court.

Lastly, the Court denies without prejudice Plaintiff's motion for attorney representation [4]. There is no right to court-appointed counsel in federal civil cases, but the Court may recruit a lawyer to represent an indigent litigant on a *pro bono* basis. *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022). In deciding whether to recruit counsel, the Court must determine whether (1) the plaintiff has made a reasonable attempt to obtain counsel on his own or has been effectively precluded from doing so; and if so, (2) given the difficulty of the case, the plaintiff appears competent to litigate it himself. *Id.* (citing *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007)). Because recruited counsel is a limited resource, the Court may also consider the importance and likely merits of the party's claims. *Id.* at 763.

Plaintiff's motion shows that he made no effort to contact attorneys or organizations to seek representation. [4] at 1. Before this Court will consider recruiting counsel for him, Plaintiff must demonstrate efforts that he made to obtain counsel on his own. *See Pickett v. Chi. Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). Plaintiff should write three or more attorneys or legal aid agencies and ask them to take his case, *pro bono* if necessary. He should save any responses he receives for submission to the Court with future motions for counsel. In any event, Plaintiff does not need counsel to submit completed USM-285 forms, which is the next step in litigation. Should this case proceed to a point where recruitment of counsel makes sense, the Court will revisit the matter.

Dated: March 5, 2025                          Entered:

                                                           John Robert Blakey
                                                           United States District Judge